**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ALMA ZENDEJAS, DIONICIO** | ) | |
| **SANTANA, NANCY GONZALEZ,** | ) | |
| **GUADALUPE OCOTITLA,** | ) | |
| **LEONORILDA VELASQUEZ,** | ) | |
| **FRANCISCO OCOTITLA, EZEQUIEL** | ) | |
| **GONZALEZ, MODESTA RUIZ,** | ) | |
| **FELIPE RUIZ, RAYMUNDO** | ) | |
| **OCOTITLA, IVAN DOMINGUEZ** | ) | |
| **MARTINEZ, NELSON LAGUNAS,** | ) | |
| **and JOSE SACRAMENTO SALAS** | ) | |
| **ORTIS,** | ) | **No. 05 C 6933** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **REEL CLEANING SERVICES, INC.,** | ) | |
| **ALL PRO CLEANING SYSTEMS, INC.,** | ) | |
| **ELAN KOHEN, ABIATHAR** | ) | |
| **SOLUTIONS, L.P., and ALL PRO** | ) | |
| **CLEANING SOLUTIONS, L.P.,** | ) | |
| | ) | **Wayne R. Andersen** |
| **Defendants.** | ) | **District Judge** |

**MEMORANDUM OPINION AND ORDER**

On May 29, 2009, Magistrate Judge Geraldine Soat Brown filed her report and

recommendation concerning plaintiffs' motion to enforce the settlement agreement in this case.

Judge Brown recommends that plaintiffs' motion to enforce the settlement agreement be granted.

After careful consideration of the motion to enforce the settlement agreement, the

applicable memoranda of law, the relevant briefs, Judge Brown's report, defendants' objections

thereto and memorandum in support, and plaintiffs' memorandum opposing defendants'

objections, this court hereby adopts in full Judge Brown's report and recommendation.

# BACKGROUND

The report and recommendation issued by Judge Brown includes an extensive and complete factual background regarding the events at issue in the instant motion to enforce the settlement agreement. In addition, Judge Brown primarily supervised the settlement proceedings in this case. Therefore, we, in large part, adopt the recitation of the factual events in Judge's Browns report and recommendation as our own.

## I.     The Complaint

Plaintiffs Alma Zendejas, Dionicio Santana, Nancy Gonzalez, Guadalupe Ocotitla, Leonorilda Velasquez, Francisco Ocotitla, Ezequiel Gonzalez, Modesta Ruiz, Felipe Ruiz, Javier Ocotitla Tellez, Raymundo Ocotitla, Ivan Dominguez Martinez, Nelson Lagunas, and Jose Sacramento Salas Ortis (collectively "plaintiffs") filed their initial complaint in this case on December 8, 2005. Plaintiffs' third amended complaint is currently pending before the court and sets forth allegations that the defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL") by failing to pay plaintiffs and other similarly-situated employees their earned overtime pay and minimum wages. (Third Am. Compl. ¶ 1.) Certain plaintiffs also bring claims under the anti-retaliation provision of the FLSA for defendants' alleged unlawful termination of their employment. (*Id.*)

## II.     The Parties and Attorneys

Settlement negotiations between plaintiffs and certain defendants began in May 2008. Attorney Douglas Werman represented all plaintiffs in the settlement negotiations and attorney Kenneth Henry represented defendants All Pro Cleaning Systems, Inc., All Pro Cleaning

Systems, L.P., and Elan Kohen. The settlement was also to include Marina Kohen, wife of defendant Elan Kohen, and William Grobowski on the defendants side, neither of which was a party named in the third amended complaint. Reel Cleaning Services, Inc. ("Reel") was the only party not involved in the settlement discussions. Reel has not been represented by counsel since October 2007 and was never represented by Mr. Henry. For simplicity, this opinion will refer to those represented by Mr. Henry as "defendants," and those who participated in the settlement as "the parties."

The defendants have had several attorneys represent them in this litigation. Defendants' original counsel withdrew in the fall of 2007. Mr. Henry filed his appearance on January 31, 2008. On October 21, 2008, Bonita Stone filed an additional appearance on behalf of defendants and stated that, at the time plaintiffs filed the instant motion to enforce the settlement agreement, Mr. Henry was her "predecessor counsel" and was "still co-counsel in this case." (Tr. Dec. 5, 2008 at 3.) (Ms. Stone withdrew as counsel for defendants on February 5, 2009 and Mr. Henry withdrew as counsel for defendants on June 19, 2009, after Judge Brown issued her report and recommendation. Defendants' new counsel filed an appearance on June 23, 2009 and filed the objections to Judge Brown's report on behalf of defendants.) After Ms. Stone filed her appearance in October 2008, she attended all court proceedings on behalf of defendants.

At a court appearance on December 5, 2008, Judge Brown asked Ms. Stone whether the defendants contended anything Mr. Henry said on their behalf was unauthorized. (Tr. Dec. 5, 2008 at 6.) Ms. Stone stated that she needed to consult with her clients on that matter and Judge Brown tentatively scheduled an evidentiary hearing on the issue of Mr. Henry's authority. (*Id.* at 8-9.) On December 11, 2008, after consulting with defendants, Ms. Stone reported to Judge

Brown that defendants would not assert that any of Mr. Henry's actions or communications were unauthorized.  (Tr. Dec. 11, 2008 at 2.)  Specifically, Ms. Stone stated,

> The answer to your Honor's question which was posed to me last week, which was whether or not the defendants contended that Mr. Henry's actions or any of Mr. Henry's actions in connection with his communications to Mr. Werman were unauthorized.  I think that was...the sum and substance of what you said.  And the answer to that is that it is not a position that the defendants are going to advocate.  I'm comfortable after I talked to Mr. Henry.  I also talked with Marina.  And I think that the paper trail communications of Mr. Henry would reflect that he was our agent, and we'll stand by what he did.

(*Id.*)  This clarified a somewhat ambiguous statement in Mr. Henry's declaration in which he stated that after reviewing the July 31, 2008 settlement proposal with his clients, he was not authorized to accept the proposal.  (Henry Decl. ¶ 10.)  Therefore, Judge Brown struck the scheduled evidentiary hearing regarding the issue of Mr. Henry's authority on the basis that it was no longer necessary.  (*See* Tr. Dec. 11, 2008 at 3.)

## III.    Settlement Discussions

The initial settlement discussions between the parties involved the amount of money defendants would pay and the timing of the payment.   Neither side disputes the fact that the parties ultimately agreed to an amount of $155,000 inclusive of attorneys' fees.  (Werman Decl. ¶ 3; Henry Decl. ¶ 5; *see also* Tr. June 6, 2008 at 2.)  Additionally, the parties agreed that the payment would be made in installments with an initial sum of $40,000 to be paid on August 1, 2008 and equal monthly installments of $6,388.89 to be paid thereafter through February 1, 2010.  (Werman Decl. ¶ 3; Henry Decl. ¶ 5.)

A status conference was held before Judge Brown on June 6, 2008, at which point Mr. Werman indicated that he thought the case was settled based on an agreement that had been reached that morning.  (Tr. June 6, 2008 at 2, 5.).  Mr. Werman did indicate that there were some

unresolved issues regarding who would sign the agreement and in what capacity and the consequences if defendants failed to make an installment payment, but Mr. Werman and Mr. Henry both indicated that they were confident that those issues could be resolved. (*Id.* At 2-3, 5.) Mr. Henry did not object to Mr. Werman's characterization of the outstanding issues, nor did he mention any other unresolved issues. (*See* Tr. June 6, 2008.) The parties then planned to return to court for another status before Judge Brown on July 17, 2008.

On July 6, 2008, Mr. Werman e-mailed a draft Master Settlement Agreement ("draft Master Agreement") and a draft Individual Settlement Agreement and release ("draft Individual Release") to Mr. Henry. (*See* Werman Decl., Ex. B.) The financial aspects of the draft Master Agreement were consistent with the terms set forth above. Additional terms in the draft Master Agreement included provisions regarding enforcement, dismissal of claims, and confidentiality. The draft Individual Release provided that a signing plaintiff released defendants from all claims pertinent to the lawsuit. (*Id.*)

On July 17, 2008, Mr. Werman and Mr. Henry appeared before this court and informed the court that the case had settled and that the attorneys were working through some paperwork. (Tr. before J. Andersen, July 17, 2008 at 2.) Again, Mr. Henry did not object to Mr. Werman's characterization of the case or to his statement that the case had settled. That same day the parties appeared before Judge Brown and reported similar information. (Tr. before J. Brown, July 17, 2008.) Mr. Henry indicated, "I have advised my client that even if we don't have all the Ts crossed and Is dotted that they need to be prepared to [start making payments as of August 1]." (*Id.* at 2-3.) Judge Brown then set a status date of August 4, 2008 and stated that she would "definitely anticipate, not just hope, but anticipate that th[e first installment] payment will be

made on August 1ˢᵗ." (*Id.* at 4.)  Neither Mr. Werman nor Mr. Henry objected to Judge Brown's statements.

On or about July 29, 2008, Mr. Henry e-mailed the July 29 draft agreements to Mr. Werman.  The e-mail included the defendants' proposed revisions to the draft Master Agreement and the draft Individual Release.  (Werman Decl., Ex. C; Henry Decl. ¶ 7.)  The clearly noted revisions included: 1) removing reference to defendants as "employer" and replacing that with "defendant"; 2) adding "whereas" clauses in the draft Master Agreement; 3) stating that installment payments would be made to Mr. Werman's firm to be distributed to plaintiffs; 4) editing tax-related provisions in both documents; 5) removing an example of a disclosure prohibited under both agreements' confidentiality provisions; and 6) adding a statement to the draft Individual Release requiring a plaintiff to return all sums paid if he or she violated either agreement.  (July 29 draft Master Agreement at 1-3; July 29 draft Individual Release at 1-3.)

Additionally, in the cover e-mail attaching the July 29 drafts, Mr. Henry posed this question to Mr. Werman:

> Lastly, my clients have told me that you made some representation to them that you would agree not to settle this case and then turn around and find other similarly situated workers and come after them again.  Is that true? And regardless, is such an agreement possible, or even enforceable?

(Werman Decl., Ex. C.)  My Henry subsequently restated his question:

> My clients told me that, at some point in the litigation when you were apparently speaking directly to them (perhaps when they were without counsel), you represented to them that if they settled this matter, you would agree, as part of the settlement, to not come after them again, at least on a fact pattern similar to the current one.  They are interested in having such a representations as part of any settlement.  Frankly, even if you were to agree to such a provision (?), I am not sure that it is either ethical or enforceable.

(*Id.*)  Mr. Werman then responded on July 30:

I did not make such a statement, nor could I under the ethical rules. Even if such an agreement were made (which again, it cannot), you are correct that it would not be enforceable. (*Id.*) The record does not contain any evidence that Mr. Henry or the defendants proposed specific language for a settlement term in which Mr. Werman agreed not to sue on behalf of other individuals. Further, there is no indication of such a term in Mr. Henry's July 29 drafts of the settlement documents and Mr. Henry's e-mail raised the subject only as a question.

On July 31, 2008, Mr. Werman responded to Mr. Henry's changes to the draft agreements. The cover e-mail stated that they were close to being finished and attached revised drafts. (Werman Decl., Ex. D.) Mr. Werman's draft accepted all of Mr. Henry's changes and made the following additional revisions: 1) simplifying the description of the installment payments; 2) clarifying the provision that the stipulation without prejudice to be filed after the first installment payment was made would turn into a dismissal with prejudice on March 1, 2010; 3) adding a provision in which the signatory defendants acknowledged they would be jointly and severally liable for the entire settlement amount; and 4) modifying the penalty in the event of a plaintiff's breach from total forfeiture of an individual plaintiff's settlement proceeds to a 50% penalty. (July 31 draft Master Agreement ¶2(k); July 31 draft Individual Release ¶ 3.)

Mr. Werman states that the changes made to the Master Agreement were only "style and clarifying changes" and that the clarifying language was "consistent with the articulated understanding and agreement between counsel." (Werman Decl. ¶ 7.) Mr. Henry does not dispute Mr. Werman's characterization of the clarifying changes. (Henry Decl. ¶ 10.) Additionally, defendants raise no specific objections to Mr. Werman's changes to the agreements on July 31. (*See generally* Henry Decl.) Instead, Mr. Henry's declaration makes

the conclusory statement that he "was not authorized to accept that proposal nor did [he] ever make any statement, either verbally or in writing, indicating that [his] clients accepted the proposed settlement," and that "there was no agreement with respect to the July 31 proposal because it [did] not resolve [his] clients' concern with respect to finality." (Henry Decl. ¶ 10.)

The lawyers next appeared before Judge Brown on August 4, 2008. At that hearing Mr. Henry told Judge Brown that the parties were very close to settlement, that revisions had gone back and forth between him and Mr. Werman, and that he thought that any items that were of concern to his clients were resolved. Further, Mr. Henry stated that he expected to go over the agreement with his clients that day. (Tr. Aug. 4, 2008 at 2-3.) When Judge Brown inquired as to whether the first installment payment, originally scheduled to be paid on August 1, had been paid, Mr. Henry indicated that his clients were concerned about paying without a signed agreement, but that he expected everything to be wrapped up imminently and the check to be issued promptly. (*Id.* at 3-5.) Judge Brown then set another status for August 12, 2008.

On August 6, 2008, Mr. Werman sent an e-mail to Mr. Henry inquiring about the status of the settlement documents, but the record is devoid of any written response from Mr. Henry. (Werman Decl., Ex. E.)

The parties next appeared before Judge Brown on August 12, 2008. At that status hearing Mr. Werman stated that Mr. Henry had made a demand for an "entirely new term" (that plaintiffs provide fingerprints or picture identification as a condition of receiving payment) just the previous day. (Tr. Aug. 12, 2008 at 2.) Although Mr. Henry's declaration suggests that he raised the issue in late July (*see* Henry Decl. ¶¶ 8-10), he did not dispute Mr. Werman's report of the timing or newness of the demand at the August 12 status hearing (*see generally* Tr. Aug.

12, 2008), nor did his July 29 draft settlement documents or July 29 or 30 e-mails contain such a term. (*See* Werman Decl., Ex. C.) After Mr. Werman expressed frustration regarding the status of the settlement and the fact that the first installment payment had not been paid and requested that defendants be called into court to sign the documents, Mr. Henry stated,

> I think we have made pretty significant progress just to be where we're at...[A]s your Honor well knows from some other cases that, frankly, I have had with your Honor, that there is remorse even after that sometimes you have to work through. I don't think it is necessary to bring my clients in, into court. They are currently out of town. They are expected in town, I believe it is, like the 18th or 19th, next week. I believe that based on – and ***we're not talking about big issues here***. The money issue is a settled issue. The payment period is a settled issue. The method of payment is a settled issue. There are certain releases that they were looking for that may not be possible. And maybe they have some decisions to make on that. But I mean ***the essential terms and conditions of this agreement are pretty much in place and have been agreed upon by the parties***. So I – I don't think it is necessary to bring them into court...

(Tr. Aug. 12, 2008, at 3, emphasis added.). Further, Mr. Werman concurred that "all of the material terms of this agreement have been resolved." (*Id.* at 4.) Judge Brown then gave the parties a new date of August 28, 2008 to finalize the settlement documents. She stated that if any outstanding issues were not resolved by that date, Mr. Henry would have to bring his clients into court, to which Mr. Henry agreed. (*Id.*)

Although Mr. Henry's declaration claims that, at the August 12 hearing, he "disputed Mr. Werman's opinion [that there was a complete, enforceable agreement] and maintained that there was no settlement agreement because the proposed settlement did not contain adequate assurances that these Defendants would not be subject to serial litigation by the Plaintiffs or other similarly situated individuals – a material term these Defendants have repeatedly insisted must be part of the settlement," (Henry Decl. ¶ 12), the transcript from that hearing reveals nothing of such a dispute. Rather, Mr. Henry made no mention of "serial litigation" and

indicated, "we are not taking about big issues here." (Tr. Aug. 12, 2008 at 3.) Further, Mr. Henry did not dispute Mr. Werman's characterization that all "material terms were agreed upon, and himself stated that the "essential terms" were in place. (*Id*.)

The lawyers again appeared before Judge Brown on August 28, 2008, at which time Mr. Werman indicated although "[w]e have an agreement," defendants continued to insist on plaintiffs being photographed and fingerprinted and plaintiffs would not agree to that. (Tr. Aug. 28, 2008 at 2.) After off-the-record discussions, the court ordered Mr. and Mr. Kohen to appear in person on September 9, 2008, which was later reset to September 17, 2008. Mr. and Mrs. Kohen then had an off-the-record settlement conference with both Judge Brown and this court. In their declarations, the parties' counsel dispute whether the only outstanding issue raised by defendants at those conferences was their demand that plaintiffs provide a fingerprint or photo identification before receiving any settlement payment, or whether defendants also reiterated their request that Mr. Werman assure them that he would not seek to represent other individuals in litigation against defendants. (*Compare* Werman Decl. ¶¶ 14, 16 *with* Henry Decl. ¶¶ 13-15.)

On September 23, 2008, counsel again appeared before Judge Brown. At that time Mr. Werman conveyed that he believed the parties had reached a settlement, but that defendants were not willing to abide by it. Mr. Henry responded that he disagreed that a settlement had been reached. (Tr. Sept. 23, 2008 at 2-3.) On October 6, 2008, Mr. Werman signed a copy of the draft Master Agreement, which appears to be a clean version of the July 31 draft, incorporating all revisions, and sent it to Mr. Henry the following day. (Werman Decl., Ex. F.) The agreement also contains a table with the schedule of payments.

On October 9, 2008, plaintiffs filed the instant motion to enforce the settlement

agreement, which the defendants oppose. As stated in the report and recommendation, Judge

Brown initially scheduled an evidentiary hearing on the motion, but then struck the hearing as

unnecessary because, "while the parties dispute whether a binding settlement agreement was

reached, the material facts regarding whether an agreement exists, or its terms, are not in

dispute." (Rep. & Rec. of J. Brown at 15.) Further, Judge Brown concluded, "[d]efendants do

not contend that Mr. Henry's conduct and statements regarding settlement were in any way

unauthorized. To the extent Mr. Henry's declaration is vague or conclusory, or his and Mr.

Werman's declarations conflict, the remaining record, as objectively set out in the parties'

contemporaneous written communications and court transcripts, resolves any disputes about

material facts." (*Id.*)

## LEGAL STANDARD

In considering the report and recommendation of a magistrate judge and a party's

objections to that report, we must "determine de novo any part of the magistrate judge's

disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). This "de novo

determination" does not require a new hearing, but simply means that we must give "fresh

consideration to those issues to which specific objections have been made." *Rajaratnam v.

Moyer*, 47 F.3d 922, 925 n.8 (7th Cir. 1995)(citation omitted). "If no objection or only partial

objection is made, the district court judge reviews those unobjected portions for clear error."

*Johnson v. Zema Syst. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). With this standard in mind, we

now turn to plaintiffs' motion to enforce the settlement agreement.

## DISCUSSION

## I.      Defendant's Objections to the Report and Recommendation

Judge Brown's report recommended enforcement of the settlement agreement based upon three legal conclusions: 1) the parties reached an agreement on the material terms of the settlement; 2) defendants' execution of the settlement documents was not a condition precedent to a binding agreement; and 3) the statute of frauds does not preclude enforcement of the settlement. Judge Brown also made a factual determination, based on the record, that all of Mr. Henry's representations on behalf of the defendants were authorized.

The defendants filed specific objections to Judge Brown's report and recommendation, through their new counsel, on June 23, 2009. Specifically, the defendants claim: 1) Mr. Henry did not have authority to settle the case without proof of the plaintiffs' identities or with a provision binding Mr. Kohen; 2) meeting of the minds as to all material terms did not occur; and 3) the agreement is barred by the statute of frauds. Pursuant to Rule 72, we now turn to defendants' objections and make a de novo determination on the merits of defendants' objections.

*A.    Mr. Henry's Authority*

First, because the issue of Mr. Henry's authority is relevant to whether or not there was agreement as to all material terms, we will discuss this issue first. Defendants' objections to Judge Brown's report and recommendation indicate that the defendants informed Mr. Henry on several occasions that he should not agree to settle the dispute without an adequate proof of identity provision or with any provision binding Mr. Kohen personally. (Def's Obj. at 8-11.) Therefore, defendants' argue that any agreement that does not contain an adequate proof of identity provision or that binds Mr. Kohen personally is invalid because it was entered into without defendants' consent. (*Id.* at 8-9.) However, we decline to find that Mr. Henry was

unauthorized to enter into the settlement agreement in this case.

First, as previously discussed above, defendants' argument that Mr. Henry's representations on behalf of defendants were not authorized is directly contradicted by express statements to the contrary. At a court appearance on December 5, 2008, Judge Brown specifically asked Bonita Stone, as counsel for defendants, whether the defendants intended to take the position that any of Mr. Henry's representations on behalf of defendants were unauthorized. (Tr. Dec. 5, 2008 at 6.) After consulting with her clients, Ms. Stone represented to Judge Brown that defendants would not take that position and Judge Brown struck the scheduled evidentiary hearing on the issue of Mr. Henry's authority. (Tr. Dec. 12, 2008 at 2-3; *see* pp. 3-4 *supra*.) Ms. Stone's statement is an unambiguous representation that Mr. Henry's actions on behalf of defendants were authorized.

Second, defendants' argument regarding Mr. Henry's authorization was made for the first time in their objections to Judge Brown's report and recommendation. Arguments not raised before a magistrate judge and raised for the first time in the objections filed before the district judge are waived. *U.S. v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000); *Cunningham v. Posnet Servs., LLC*, No. 05 C 4191, 2008 U.S. Dist. LEXIS 25967, at *8-9 (S.D. Ill. Apr. 1, 2008)(in considering a magistrate judge's report and recommendation to enforce a settlement agreement, the district judge held that plaintiffs waived certain arguments that were raised for the first time in their objections); *see also Hopson v. Davis*, No. 04 C 604, 2006 U.S. Dist. LEXIS 8130, at *2 (S.D. Ill. Feb. 3, 2006) ("arguments raised for the first time in an objection are waived."); *Lowe v. Frank*, No. 03 C 266, 2004 U.S. Dist. LEXIS 5380, at *8 (W.D. Wis. Mar. 9, 2004)("Petitioner asserted this claim for the first time in his objections to the magistrate

13

judge's report and recommendation. That was too late."). Pursuant to Rule 72(b) we are to make a de novo determination regarding defendants' objections, however, the introduction of brand new arguments "at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them." *Melgar*, 227 F.3d at 1040.

Accordingly, for the reasons set forth above, we find that the defendants not only waived any argument regarding Mr. Henry's lack of authority by raising it for the first time in their objections to Judge Brown's report, but they expressly stated otherwise through Ms. Stone's statements that Mr. Henry was defendants' agent and that his representations on behalf of defendants were authorized. Therefore, we reject defendants' lack of authority objection to Judge Brown's report and recommendation and will proceed with the remainder of our analysis based upon our finding that Mr. Henry's actions and representations to the court were authorized.

B. *Agreement as to all Material Terms*

Defendants also object to Judge Brown's determination that the parties reached an agreement on the material terms of the settlement. The defendants claim that their "proposal that the plaintiffs provide verifiable proof of their identities is a material and essential term of any eventual settlement." (Def's Obj. at 5.) However, the undisputed facts and the record in this case demonstrate that the parties reached an agreement as to all material terms no later than July 31, 2008.

"A motion to enforce a settlement agreement is essentially the same as a motion to enforce a contract." *Allstate Fin. Corp. v. Util. Trailer of Ill., Inc.*, 936 F. Supp. 525, 528 (N.D.

Ill. 1996); *see Hyde Park Union Church v. Curry*, 942 F. Supp. 360, 363 (N.D. Ill. 1996)(contract analysis must be applied in order to determine whether the parties formed a contract to settle); *Schaap v. Executive Indus., Inc.*, 760 F. Supp. 725, 726 (N.D. Ill. 1991)(traditional contract elements must be found before the court will enforce a settlement agreement). Because a settlement agreement is a contract, enforceability of a settlement agreement is governed by local contract law. *See Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). Therefore, the parties agree that Illinois contract law governs the enforceability of the contract in this case.

"Oral settlements made in open court and on the record are enforceable by a district court." *Wilson v. Detella*, 97 C 7833, 2005 U.S. Dist. LEXIS 17546, at *6 (N.D. Ill. Aug. 18. 2005)(citing *Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995); *Hyde Park Union Church*, 942 F. Supp. at 363)). Under Illinois law, this is true "as long as there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement," *Wilson*, 46 F.3d at 666 (citation omitted). Illinois follows the objective theory of intent, and thus whether the parties had a "meeting of the minds" is determined not by their subjective intent, such as internal thought processes or "secret hopes and wishes," but by what they expressed "to each other and to the world." *Laserage Tech. Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)(citation omitted); *see also Empro Mfg. Co. Inc. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 425 (7th Cir. 1989) ("Contract law gives effect to the parties' wishes, but they must express them openly...'[I]ntent' in contract law is objective rather than subjective...").

While a meeting of the minds as to all material terms is required, *Abbott Labs.*, 164 F.3d

at 387, "settlement agreements that do not explicitly resolve ancillary issues can nonetheless be enforceable." *Porter v. Chi. Bd. of Educ.*, 981 F. Supp. 1129, 1131 n.4 (N.D. Ill. 1997). Therefore, "[t]he fact that the parties le[ave] some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* (citations omitted). Further, "Illinois courts have not been shy about enforcing promises made in the context of ongoing negotiations and often involving preliminary or 'incomplete' agreements." *Dawson*, 977 F.2d at 374 (internal citations omitted).

Therefore, while a contract may be enforced if some terms are missing or incomplete, "if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken there is no contract." *Detella*, 2005 U.S. Dist. LEXIS 17546, at *7-8 (quoting *Acad Chi. Publishers v. Cheever*, 144 Ill. 2d 24, 30, 578 N.E.2d 981, 984 (Ill. 1991)(citations omitted)). Accordingly, the material terms of a contract must be sufficiently "definite" in order for it to be enforceable. *Treadmasters, Inc.*, 1996 U.S. Dist. LEXIS 10446, at *11(citation omitted). Under Illinois law, a contract "is sufficiently definite and certain to be enforceable if the court is enabled from the terms of provisions thereof, under proper rules of construction and applicable principals of equity to ascertain what the parties have agreed to do." *Cheever*, 144 Ill. 2d at 29, 578 N.E.2d at 983 (citation omitted). Thus, as long as "the parties had an objective basis for determining when either party had breached the oral settlement agreement," nothing more is required. *Wilson*, 46 F.3d at 667.

Courts within the Seventh Circuit have enforced settlement agreements when the parties agreed on the amount to be paid, although other terms had not been agreed upon. *E.g., Wilson*, 46 F.3d at 667 (affirming the enforcement of an oral settlement agreement despite the fact that

the agreement did not specify whether there would be mutual releases or covenants not to sue); *Flood v. Ty, Inc.*, No 02 C 9497, 2005 U.S. Dist. LEXIS 7974 (N.D. Ill. Apr. 5, 2005)(recommending enforcement of oral settlement agreement notwithstanding subsequently-raised issues of confidentiality and release of attorney's lien), *adopted and case dismissed with prejudice, Flood v. Ty, Inc.*, No. 02 C 9497 (N.D. Ill. Nov. 29, 2005).

Based upon the standards articulated above, it is clear that an agreement as to all of the material terms was reached in this case. We reach this conclusion based on two sets of facts: 1) counsel for both sides represented on the record on several occasions that a settlement had been reached and that all material terms had been agreed upon; and 2) the "finality" issue that defendants' address in their objections, obtaining fingerprints and photographs of the plaintiffs, was not raised until August 11, 2008, well after a settlement agreement was reached on July 31, 2008.

i.      <u>Counsels' representations that the parties had reached a settlement</u>

First, the lawyers, including Mr. Henry, made several representations to Judge Brown that a settlement had been reached and all essential terms had been agreed upon. At a status hearing before Judge Brown on June 6, 2008, Mr. Werman and Mr. Henry both acknowledged that an agreement regarding the monetary amount had been reached. (Tr. June 6, 2008 at 2, 5.) Additionally, both attorneys' declarations are consistent in that they describe the agreement as defendants paying $155,000 in installments over an 18 month period. (Werman Decl. ¶¶ 3-4; Henry Decl. ¶ 5.) All of the draft Master Agreements contained these same terms. (*See* Werman Decl. Exs. B, C, and D.) Furthermore, as discussed in detail above, the draft agreements exchanged between the attorneys in July 2008 mostly contained stylistic changes

and neither attorney represented to the other attorney that any material terms were missing from the agreement and would need to be added at a later date.  (*See* pp. 5-8 *supra*.)

On August 12, 2008, Mr. Henry also made explicit statements on the record that all material terms had been agreed upon when he stated, "[t]he money is a settled issue.  The payment period is a settled issue.  The method of payment is a settled issue...the essential terms and conditions of this agreement are pretty much in place and have agreed upon by the parties." (Tr. Aug. 12, 2008 at 3.)  Although Mr. Henry made references to "certain releases that [defendants] were looking for that may not be possible," there is no indication on the record that those were material terms preventing settlement.  In addition, Mr. Henry downplayed the importance of these terms, stating, "we're not talking about big issues here."  (Tr. Aug. 12, 2008 at 3.)

Further, to the extent that the defendants were concerned about subsequent litigation by the plaintiffs in this case, and argue that a provision regarding that issue was a material term of the settlement, the record demonstrates otherwise.  Mr. Werman's July 6 draft Individual Release contained detailed releases by all present plaintiffs of all relevant claims, and his July 6 draft Master Agreement contains a provision acknowledging and incorporating those releases. (July 6 draft Individual Release ¶1(f); July 6 draft Master Agreement ¶ 1.)  Mr. Henry's July 29 e-mail and attached drafts did not propose any additional terms for the releases, and his suggested changes were only to change "employer" to "defendant" and "employee" to "plaintiff."  (July 29 draft Master Agreement ¶ 1; July 29 draft Individual Release ¶ 1(f).)

    ii.  Proof of identity issue was raised for the first time on August 11, 2008

Second, the record demonstrates that the defendants' raised the proof of identity issue

for the first time on August 11, 2008. (Tr. Aug. 12, 2008 at 2, 4.) In their objections, defendants argue that this issue was first raised by Mr. Henry in e-mails to Mr. Werman with proposed changes to the draft agreements on July 29. (Def's Obj. at 7.) However, defendants are confusing two distinct "finality" issues. The first issue, which was raised in Mr. Henry's July 29 e-mail is the issue of whether Mr. Werman would agree to forego representing other individuals in future similar lawsuits. Defendants do not appear to raise this issue at this time (although they raised it in their briefs before Judge Brown). With respect to this issue, the lawyers seemed to agree that such a promise would be unenforceable. Moreover, the issue of Mr. Werman agreeing not to represent other individuals in future similar lawsuits was simply raised as a question in Mr. Henry's July 29 e-mail, no concrete term was ever proposed by Mr. Henry, and the question was rejected in Mr. Werman's e-mail on July 30, prior to Mr. Henry's statements at the August 4 and August 12 status hearing. (*See* Werman Decl. Ex. C.)

The second "finality" issue, that plaintiffs agree to provide a fingerprint or photo identification in advance of receiving a settlement payment, was not raised until August 11, 2008, and is the issue that defendants' raise in their objection before this court. This demand cannot be found in Mr. Henry's July 29 e-mail, no language for the fingerprint/photo identification demand was ever proposed, and a review of the transcript reveals that the demand was made for the first time on August 11. (Tr. Aug. 12, 2008 at 2,4.) The Seventh Circuit has held that "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient...If a party to a ...suit who has previously authorized a settlement changes his mind...,that party remains bound by the terms of the agreement." *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986)(citations omitted); *see also*

*Porter*, 981 F. Supp. At 1132 ("a mere change of mind is not sufficient grounds for setting aside a settlement agreement.")(quoting *Moore v. Cooper*, No. 94 C 788, 1996 U.S. Dist. LEXIS 5387, at *7 (N.D. Ill. Apr. 24, 1996)). Therefore, defendants desire for additional "finality," which was not expressed until after the material terms of the settlement were agreed upon, is irrelevant and cannot be used to set aside the prior agreement.

Accordingly, for the reasons set forth above, we reject defendants' objection to Judge Brown's report and recommendation based upon their argument that a term regarding "finality" was a material term and therefore there was no meeting of the minds between the parties as to all material terms. We adopt Judge Brown's finding that the parties reached an agreement on the material terms of the settlement no later than July 31, 2008.

C.       *Statute of Frauds*

Defendants' final objection to Judge Brown's report and recommendation is that the settlement agreement is unenforceable under the Illinois statute of frauds, which provides in relevant part,

> No action shall be brought...to charge any person...upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

740 ILCS 80/1. Therefore, the Illinois statute of frauds "prohibits oral contracts that cannot be performed within one year of their making." *Robinson v. BDO Seidman LLP*, 367 Ill. App. 3d 366, 370, 854 N.E.2d 767, 772 (1st Dist. 2006). Defendants argue that because the settlement agreement includes a provision that the defendants would pay the plaintiffs in 19 installments over an 18 month period, performance will not take place within one year, and the oral

agreement is, therefore, invalid. (Def's Obj. at 12.)

However, as Judge Brown correctly noted, the Illinois Appellate Court has recognized an exception to the statute for settlement agreements that are reflected in admissions before a court. Specifically, in *Kalman v. Bertacci*, 57 Ill. App. 3d 542, 373 N.E.2d 550 (Ill. App. Ct. 1978), the Illinois Appellate Court held that because the parties stated their settlement agreement regarding the sale of land in open court and the court reporter transcribed their statement, the transcription served the same purpose as a signed writing of the agreement and the statute of frauds was inapplicable. *Id.* at 546-50, 373 N.E.2d at 554-56. Further, a signature was not necessary because a court admission serves the same purpose as a signature – authentication. *Id.* at 549, 373 N.E.2d at 556. In *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 799 N.E.2d 469 (Ill. App. Ct. 2003), the Court affirmed the trial judge's decision to enforce a settlement agreement involving installment payments over 20 months, for which the essential terms had been agreed to during a settlement conference in the judge's chambers, but for which no written transcription existed. *Id.* at 1089, 1097, 799 N.E.2d at 472, 478-79.

Defendants object to Judge Brown's conclusion that the present case falls under the above exception to the statute of frauds because they argue that *Kalman* and *Rose* are distinguishable from this case based on the fact that both cases involved the participation of the court in guiding and supervising the settlement process. (Def's Obj. at 13-14.) However, although both the *Kalman* and *Rose* case made some mention of that fact, neither case indicated that was a key factor in its decision. Rather, both opinions seemingly based their holdings on whether the purpose behind the statute of frauds would be upheld if the oral settlement agreement was enforced. Specifically, in *Rose*, the court asked whether "the possibility of fraud

is negated" because "the trial judge can...resolve any disputes as to whether an agreement was in fact reached or the content of that agreement." *Id.* at 1097, 799 N.E.2d at 478; *see also Kalman*, 57 Ill. App. 3d at 550, 373 N.E.2d at 556.

Here, the possibility of fraud is negated because, although the parties' negotiations were outside the presence of court, counsel for both sides appeared before Judge Brown on many occasions to report on the statute of the negotiations and Judge Brown was keenly aware of the ongoing settlement discussions. Additionally, we have unambiguous evidence on the record demonstrating that the parties had agreed to the material terms of the settlement and the terms of the agreement are part of the record. Therefore, both Judge Brown and this court are able to determine: 1) that an agreement was reached, and 2) the content of that agreement. As the Court in *Rose* explained, "[t]he purpose of the writing requirement of the Frauds Act is not to enable parties 'to repudiate contracts that they have in fact made; it is only to prevent the fraudulent enforcement of asserted contracts that were in fact not made." *Rose*, 343 Ill. App. 3d at 1097, 799 N.E.2d at 478 (citations omitted). If we failed to enforce the settlement agreement in this case, we would be doing just what the *Rose* Court cautioned against – allowing defendants to repudiate a contract they in fact made, simply because they decided after the fact that they were unhappy with some of the terms of the agreement.

Although the Illinois Supreme Court has not yet spoken with regards to the exception to the statute of frauds for settlement agreements reflected in court admissions, a federal court applying Illinois law must apply the law as the Illinois Supreme Court would. *Liberty Mutual Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003). Accordingly, because the Illinois Supreme Court has not yet spoken on this issue, we afford great weight to the

decisions by the Illinois Appellate Courts because we have no persuasive indication that the Illinois Supreme Court would decide differently. *Id.* In fact, the Illinois Supreme Court has indicated that the purpose behind the statute of frauds to serve as "an evidentiary safeguard" and to limit "problems of proof accompanying oral contracts." *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 489, 680 N.E.2d 1347, 1351 (Ill. 1997). Because the representations regarding the settlement agreement were made on the record, these precautions are not necessary, and we find that the Illinois Appellate Court decisions agree with the Illinois Supreme Court's stated analysis of the purpose of the statute of frauds. Further, the Illinois Supreme Court has also indicated that encouraging settlement agreements is an important public policy. *See, e.g., Johnson v. United Airlines*, 203, Ill. 2d 121, 133, 784 N.E.2d 812, 821 (Ill. 2003): *Rakowski v. Lucente*, 104 Ill. 2d 317, 325, 472 N.E.2d 791, 795 (Ill. 1984); *see also In re Guardianship of Babb*, 162 Ill. 2d 153, 162, 642 N.E.2d 1195, 1199 (Ill. 1994).

Therefore, for the reasons stated above, we reject defendants' statute of frauds objection to Judge Brown's report and recommendation. We adopt Judge Brown's finding that the statute of frauds does not preclude enforcement of the settlement agreement because the agreement in this case falls under the Illinois Appellate Court's recognized exception to the statute of frauds for settlement agreements reflected in admissions before the court.

Accordingly, defendants' objections to Judge Brown's report and recommendation are hereby overruled.

## II. Judge Brown's finding regarding execution of the settlement documents was not clear error

As a final matter, defendants did not file a specific objection to Judge Brown's finding that execution of the settlement documents was not a condition precedent to a binding

agreement. Therefore, as stated above, we review this finding for clear error, *Johnson*, 170 F.3d at 739, and, having done so, find no clear error in Judge Brown's conclusion. Rather, we concur with Judge Brown's holding.

Oral agreements are enforceable by a court "even if the parties to an oral settlement agreement anticipate a formal written document and one is never created or finalized. *Detella*, 2005 U.S. Dist. LEXIS 17546, at *7 (citing *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992)); *Thermos Co. v. Starbucks Corp.*, No. 96 C 3833, 1998 U.S. Dist. LEXIS 8350, at * 12 (N.D. Ill. May 28, 1998). *But see Treadmasters, Inc v. Walgreen Co.*, No. 95 C 5379, 1996 U.S. Dist. LEXIS 10446, at *8 (N.D. Ill. July 24, 1996)("[w]here the reduction of an agreement to writing and its formal execution is objectively intended by the parties as a condition precedent to it completion, there can be no contract until then, even if actual terms have been agreed upon."); *Abbott Laboratories v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999)(informal writings can constitute a binding settlement agreement, but not if the deal is expressly conditioned on the signing of a formal document, and a general agreement "with clear contemplation that further negotiations as to material terms will be required is simply not enough to form ties that bind.").

Judge Brown determined that based upon the plain language of the agreement, which did not include language that the settlement would be binding only upon execution of the agreement of the parties, and counsels' representations before the court that the triggering event for the settlement was not the parties' signatures, settlement in this case was not conditioned on a writing. (Rep. & Rec. of J. Brown at 23-25.) Defendants do not specifically object to this finding and, therefore, we need not address it further here. Rather, we simply state that Judge

Brown reasonably applied the relevant legal principles to the facts of this case to determine that a writing was not a condition precedent to a settlement in this case. Therefore, we do not find Judge Brown's conclusion to be clearly erroneous and, in fact, we concur with her finding.

For the reasons set forth above, we find that defendants' motion to enforce the settlement agreement should be granted. Additionally, because we concur with Judge Brown's finding that a settlement agreement was reached on July 31, 2008 and the first payment was to be paid on August 1, 2008, we find that defendants' have been in default since that time. Accordingly, pursuant to the terms of the Master Settlement Agreement, the settlement amount shall be accelerated in full. (Master Settlement Agreement ¶ 3.) Therefore, based on that provision, there is no reason to maintain a dismissal without prejudice at this time, as would have been the case if the settlement amount was paid in installments. Therefore, this case shall be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, we adopt Judge Brown's report and recommendation [234]. Plaintiffs' motion [192] to enforce the settlement agreement is granted. Defendants' objections [244] to Judge Brown's report and recommendation are hereby overruled. Defendants' pending motion [185] is denied as moot.

It is hereby ordered that: 1) judgment is entered in favor of plaintiffs against All Pro Cleaning Systems, Inc., All Pro Cleaning Solutions, L.P., Abiathar Solutions, L.P., William Grobowski, Elan Kohen, and Marina Kohen jointly and severally in the amount of $155,000.00 payable to Werman Law Office, L.P. immediately, and 2) this case is dismissed with prejudice. Plaintiffs may initiate appropriate supplementary proceedings to enforce their judgment. This is

a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: August 6, 2009